IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STEVEN YEVOLI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DAVIDIM AG LTD., a foreign entity; KEVIN M. BISCHOFF, an individual; and SKOUBYE NIELSON & JOHANSEN, LLC, a Utah limited liability company,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTIONS FOR SANCTIONS**<br><br>Case No. 2:25-cv-01071<br><br>Judge Tena Campbell<br>Chief Magistrate Judge Cecilia M. Romero |

Before the court are the following four motions: 1) a motion to dismiss filed by Defendant Davidim A.G. Ltd. (Davidim) (ECF No. 10); 2) a motion to dismiss filed by Defendants Kevin M. Bischoff and Skoubye Nielson & Johansen, LLC (SNJ) (ECF No. 14); 3) a motion for sanctions against Anna M. Paseman and the law firm of Parsons Behle & Latimer filed by Plaintiff Steven Yevoli (ECF No. 38); and 4) a motion for sanctions against Keith A. Call and the law firm of Spencer Fane LLP also filed by Mr. Yevoli (ECF No. 39).

On July 31, 2026, the Honorable Cecilia M. Romero issued a Report and Recommendation (R&R) in which she recommended that the court grant the pending motions to dismiss with leave for the Plaintiff to file an amended complaint addressing the identified deficiencies. (ECF No. 46.) Specifically, Judge Romero found that Mr. Yevoli failed to allege

the existence of an enterprise under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c). (Id. at 6–8.)

Mr. Yevoli filed timely objections to the R&R on August 12, 2026. (ECF No. 47.) Mr. Yevoli argues that he has plausibly alleged an association-in-fact enterprise. He also objects to the statement in the R&R that a New York state court judgment was entered against him "[o]n February 3, 2015 …." (See ECF No. 46 at 2; ECF No. 47 at 1.)

The court agrees with Mr. Yevoli that an association-in-fact enterprise may exist between attorneys and clients. But having considered the underlying motions to dismiss, which present additional arguments that are fully briefed, the court finds that Mr. Yevoli has failed to allege a pattern of racketeering activity. And because Mr. Yevoli cannot cure this deficiency through better pleading, the court finds that it would be futile to allow further amendment of the complaint.

**BACKGROUND**

The facts are fully detailed in Judge Romero's R&R. (See ECF No. 46 at 1–4.) In short, Davidim obtained a judgment against Mr. Yevoli in New York state court for $187,125.51 sometime in 2014 or 2015.[1] On February 2, 2024, Davidim filed a Notice of Filing of Foreign Judgment with the Utah state court in an attempt to domesticate the New York judgment in Utah. The notice was filed by Davidim's counsel, Mr. Bischoff, an attorney at SNJ.

Mr. Yevoli objected to several aspects of the Utah domestication proceeding, including: 1) the reference, in various writs of garnishment and court filings, to incorrect dates for the New York judgment and differing amounts of post-judgment interest that had accrued; 2) service of documents to a New York address where Mr. Yevoli no longer lived; 3) communications about

[1] The court discusses the date of the New York judgment in more detail below.

the date of a debtor's examination that Mr. Yevoli believes were misrepresented to the state court and resulted in what Mr. Yevoli asserts was an inappropriate order directing him to appear and explain why he should not be held in contempt; 4) a writ of garnishment to Chase Bank that contained allegedly incorrect information; and 5) improper service and subpoena of Mr. Yevoli's ex-spouse. Mr. Yevoli also objected on statute of limitations grounds and sought to sanction Mr. Bischoff.

The state court held a hearing on November 17, 2025, at which the judge agreed with Mr. Yevoli that the Utah case was barred by the relevant statute of limitations. See Potomac Leasing Co. v. Dasco Tech. Corp., 10 P.3d 972 (Utah 2000). The judge declined to issue any sanctions against Mr. Bischoff.

On November 24, 2025, Mr. Yevoli then filed the Complaint in this action, asserting two RICO claims, six state law claims, and one claim for declaratory judgment.

**ANALYSIS**

Mr. Yevoli takes issue with two aspects of Judge Romero's R&R. First, he objects that the order cites February 3, 2015, as the date of the New York judgment. (ECF No. 46 at 2; see ECF No. 47 at 1.) He asserts that the correct date is a matter of factual dispute. The New York judgment is attached to Mr. Yevoli's Complaint, and the court agrees that the judgment contains two conflicting dates. (See New York Judgment, ECF No. 1-2 at 8–9.) First, the document states: "Judgement signed this 3rd day of February 2014." Second, the document contains a stamp from the County Clerk's Office stating: "FILED Feb -3 2015." (Id.)

Mr. Yevoli makes a mountain of a molehill. He does not dispute—to the contrary, he alleges—that the New York summary judgment decision was entered against him on November 10, 2014. (See Compl., ECF No. 1 at 3.) It is also clear that the New York judgment

contains numerous handwritten edits. While the document originally stated "November 2014," the word "November" is blacked out and replaced by the handwritten word "February." The most sensible explanation is that someone neglected to change the year to 2015. A judgment date of February 3, 2015, would match the clerk's office stamp and would logically follow the entry of summary judgment in November 2014.

But even if there is a dispute concerning the correct date, that uncertainty undermines the basis for many of Mr. Yevoli's claims. Several of the statements made by Mr. Bischoff that Mr. Yevoli maintains are predicate acts supporting a pattern of racketeering activity are merely Mr. Bischoff's representations in various filings and writs that the New York judgment date was in November 2014. Mr. Yevoli suggests that these statements were intentional misrepresentations meant to increase the amount of post-judgment interest on the judgment. But if there is a genuine dispute about the correct date of the New York judgment, it is hard to see how any misrepresentations could be intentional.

In any event, Mr. Yevoli himself cited February 3, 2015, as the correct judgment date in his Complaint. (See Compl. at 3 (claiming February 3, 2015, as the "actual date" and "Official Entry" of the "NY Final Judgment Entry").) To the extent Mr. Yevoli now maintains this date is incorrect, he has failed to comply with his obligation under Rule 11 of the Federal Rules of Civil Procedure to ensure that any factual contentions in his pleadings have evidentiary support.

Turning to Mr. Yevoli's second objection, Mr. Yevoli maintains that he has adequately alleged an association-in-fact enterprise sufficient to support his claim for a civil RICO violation under 18 U.S.C. § 1962(c). Judge Romero recommended that the court dismiss this claim with leave to amend, finding that "[t]ypical legal services do not rise to the level of control required for RICO liability." (ECF No. 46 at 7 (quoting Bistline v. Jeffs, No. 2:16-CV-788, 2017 WL

108039, at *7 (D. Utah Jan. 11, 2017), rev'd on other grounds by Bistline v. Parker, 918 F.3d 849 (10th Cir. 2019).)

The law is unsettled in this area. Several courts have found that the relationship between a client and an attorney may rise to the level of an association-in-fact enterprise in certain circumstances. See, e.g., Bocciolone v. Solowksy, No. 08-20200-CIV, 2009 WL 936667, at *4 (S.D. Fla. Apr. 6, 2009) (finding that an attorney who, in the course of representation, crosses the line between "traditional rendition of legal services and active participation in directing the enterprise" is not shielded from RICO liability (citation omitted)); The Cadle Co. v. Flangan, No. CIV 301CV351, 2006 WL 860063, at *9–10 (D. Conn. Mar. 31, 2006) (finding that lawyers who knowingly filed false documents exceeded the rendering of legal advice and could be liable under RICO); Kruse v. Repp, 611 F. Supp. 3d 666, 699–717 (S.D. Iowa 2020) (finding that attorneys who frustrated collection efforts could be part of an association-in-fact enterprise).

But the court need not resolve the appropriate legal standard for an enterprise because Mr. Yevoli's claims are barred for a different reason: he has failed to allege a pattern of racketeering activity. While Judge Romero did not reach this question, the issue was fully briefed in the Defendants' motions to dismiss. And under 28 U.S.C. § 636(b)(1)(C), the district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

The RICO statute makes it unlawful for "any person employed by or associated with any enterprise … to conduct or participate … in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Mr. Yevoli does not contend that the New York judgment against him was unlawful, merely that the

Defendants utilized unlawful means to collect it. To adequately state a claim, he must therefore allege that the Defendants participated in a pattern of racketeering activity.

A "pattern" requires at least two predicate acts. 18 U.S.C. § 1961(5). Here, Mr. Yevoli alleges that the Defendants committed wire and bank fraud by including false information in court filings and writs of garnishment. While the court is skeptical that any of the statements made by counsel in the Utah state case rise to the level of fraud, the court need not determine whether Mr. Yevoli has sufficiently alleged that the Defendants committed predicate acts because he must also allege the existence of a pattern. In other words, he must allege that the "predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240 (1989).

"Continuity" can be either closed or open-ended. Id. at 241. Closed-ended continuity is "a closed period of repeated [racketeering] conduct," while open-ended continuity consists of "past conduct that by its nature projects into the future with a threat of repetition." Id. The court finds that Mr. Yevoli fails to allege, nor could he allege, either type of continuity.

In the Tenth Circuit, courts consider two factors when determining the existence of closed-ended continuity: 1) the duration of the related predicate acts; and 2) the extensiveness of the racketeering scheme. United States v. Smith, 413 F.3d 1253, 1271–72 (10th Cir. 2005) (citation omitted), abrogated on other grounds by Boyle v. United States, 556 U.S. 938 (2009). And in evaluating whether a plaintiff has pleaded sufficient facts to establish extensiveness, courts consider "the number of victims, the number of racketeering acts, the variety of racketeering acts, whether the injuries were distinct, the complexity and size of the scheme, and the nature or character of the enterprise." Johnson v. Heath, 56 F.4th 851, 860 (10th Cir. 2022) (citing Smith, 413 F.3d at 1272).

Here, Mr. Yevoli alleges either one victim, himself, or—to the extent that issuing a subpoena to Mr. Yevoli's ex-spouse could be said to constitute an injury—two victims. While Mr. Yevoli maintains the Defendants committed over 40 predicate acts, (see Table, ECF No. 1-1), the acts alleged all relate to similar questions about the appropriate date of the New York judgment, the appropriate amount of post-judgment interest on that judgment, and whether it was appropriate to continue sending documents to Mr. Yevoli's New York address even after that mail was returned marked "Return to Sender." Although Mr. Yevoli successfully argued in Utah state court that the New York judgment could not be domesticated in Utah due to the statute of limitations, he has not disputed that the judgment was lawfully entered in the first place. Accordingly, the nature of any enterprise was merely an attempt to collect an outstanding judgment—not exactly the type of mafia activity that RICO was enacted to combat. Finally, Mr. Yevoli has not alleged that the enterprise generally conducted its business in the same manner, nor is it plausible that Davidim, Mr. Bischoff, and SNJ have joined together to prosecute multiple Utah residents with valid outstanding judgments where collection is nevertheless time-barred under Utah law.

Mr. Yevoli fares no better under an open-ended theory of continuity because he does not allege facts plausibly showing a clear threat of future criminal conduct related to past criminal conduct. See H.J. Inc., 492 U.S. at 241–42. Indeed, "[c]ourts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity." Lefkowitz v. Bank of New York, No. 01 CIV 6252, 2003 WL 22480049, at *8 (S.D.N.Y. Oct. 31, 2003), aff'd in part, rev'd in part and remanded, 528 F.3d 102 (2d Cir. 2007).

The Tenth Circuit has held that courts must seek "a natural and commonsense result" when considering whether a plaintiff has alleged continuity sufficient to support a RICO claim. Resol. Tr. Corp. v. Stone, 998 F.2d 1534, 1544 (10th Cir. 1993) (citation omitted), abrogated on other grounds by Boyle, 556 U.S. 938. Here, Mr. Yevoli alleges that the Defendants harassed him and lied to banks and the court in their attempts to collect on an outstanding judgment. But Mr. Yevoli has not filed suit under any of the laws meant to protect consumers from fraudulent debt practices. He has instead filed a RICO claim for what amounts to his frustration that the state court judge was unwilling to issue sanctions against the attorney in the state court matter. His objections to how the state court handled those proceedings is not the type of activity that RICO was enacted to address. The "natural and commonsense result" therefore dictates that his Complaint is subject to dismissal for failing to allege the continuity necessary to support a RICO claim. And because the court finds that any amendment would be futile, the court declines to allow Mr. Yevoli an opportunity to amend his claims. As Mr. Yevoli recognizes, his second RICO claim under 18 U.S.C. § 1962(d) must be dismissed where the court finds no independent violation of a substantive offense. Having dismissed his federal claims, the court declines to exercise supplemental jurisdiction over his state law claims.[2]

Finally, Mr. Yevoli seeks sanctions against the attorneys who represent the Defendants in this case. He again focuses on the discrepancy concerning the New York judgment date: Davidim's counsel stated that the judgment date was February 3, 2015, whereas counsel for Mr.

---

[2] The court also dismisses Mr. Yevoli's request for declaratory judgment. The Declaratory Judgment Act "does not confer jurisdiction upon federal courts, so the power to issue declaratory judgments must lie in some independent basis of jurisdiction." Cardtoons, L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959, 964 (10th Cir. 1996). Because the court dismisses Mr. Yevoli's RICO claims, the court finds no independent jurisdictional basis that would allow the court to declare unlawful the acts that Mr. Yevoli details in Exhibit 1 of his Complaint. (See ECF No. 1-1.)

Bischoff and SNJ stated that the judgment date was February 3, 2014.[3] But as discussed above, the confusion over this date is understandable. And under Mr. Yevoli's theory that any statement containing a potential error about the New York judgment date is a sanctionable misrepresentation, he would also be subject to Rule 11 sanctions for the representation in his Complaint that the correct judgment date was February 3, 2015. (Compl. at 3.) The court therefore declines to impose any sanctions in this matter.

**ORDER**

For the reasons stated above, the court ORDERS as follows:

1. The court adopts in part and modifies in part the Report and Recommendation issued by the Honorable Cecilia M. Romero. (ECF No. 46.)

2. The court GRANTS the Defendants' Motions to Dismiss. (ECF Nos. 10 & 14.)

3. The court DENIES the Plaintiff's Motions for Sanctions. (ECF Nos. 38 & 39.)

4. The Plaintiff's federal RICO claims and declaratory judgment claim are DISMISSED WITH PREJUDICE for failure to state a claim.

5. The Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE.

DATED this 30th day of September, 2026.

BY THE COURT:

Tena Campbell
United States District Judge

[3] Mr. Yevoli also argues that Davidim's counsel misrepresented Davidim as a limited liability company rather than a corporation. Davidim's counsel corrected this error in a Notice of Errata filed before Mr. Yevoli filed his motion for sanctions. (See Not. Errata, ECF No. 34.) The court finds that the minor error—which counsel corrected—does not justify the imposition of Rule 11 sanctions.